No. 23-2085

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOSHUA CLAY MCCOY, et al.,
on behalf of themselves and all others similarly situated,

Plaintiffs-Appellees,

v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, et al.

Defendants-Appellants.

_____

On Appeal from the United States District Court
for the Eastern District of Virginia (No. 3:22-cv-410-REP)

The Honorable Judge Robert E. Payne

## BRIEF OF AMICI CURIAE ILLINOIS, ARIZONA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA, HAWAII, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW YORK, NORTH CAROLINA, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, AND WASHINGTON IN SUPPORT OF DEFENDANTS-APPELLANTS AND REVERSAL

ALEX HEMMER
Deputy Solicitor General
115 South LaSalle Street
23rd Floor
Chicago, Illinois 60603
(312) 814-5526
alex.hemmer@ilag.gov

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

Attorneys for Amici States

*(Additional counsel on signature page)*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..........................................................................ii

IDENTITY AND INTEREST OF AMICI STATES ...................................1

SUMMARY OF ARGUMENT ....................................................................2

ARGUMENT ................................................................................................4

I.    The Second Amendment Allows Governments To Enact Measures To Promote Gun Safety And Protect Against Gun Violence That Are Consistent With Historical Tradition. .......................................4

II.   The Challenged Restriction Is Consistent With Measures Taken By Many States And Upheld On Historical Grounds By Courts Across The Country. .....................................................................9

III.  The District Court Erred In Finding The Challenged Statute Unconstitutional. ..............................................................................16

CONCLUSION ...........................................................................................21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*District of Columbia v. Heller,*
   554 U.S. 570 (2008) ............................................................. 5, 6, 17, 19

*Hirschfeld v. ATF,*
   5 F.4th 407 (4th Cir. 2021) ................................................................ 15

*Jones v. Bonta,*
   34 F.4th 704 (9th Cir. 2022) ............................................................. 15

*Kolbe v. Hogan,*
   849 F.3d 114 (4th Cir. 2017) (en banc) .................................................. 1

*Lara v. Evanchick,*
   534 F. Supp. 3d 478 (W.D. Pa. 2021) ................................................ 15

*McDonald v. City of Chicago,*
   561 U.S. 742 (2010) ........................................................................ 5, 6

*Medtronic, Inc. v. Lohr,*
   518 U.S. 470 (1996) ........................................................................... 5

*National Rifle Ass'n v. ATF,*
   700 F.3d 185 (5th Cir. 2012),.............................................2, 14, 16, 17

*National Rifle Ass'n v. Bondi,*
   61 F.4th 1317 (11th Cir. 2023) ..................................................... 15, 19

*National Rifle Ass'n, Inc. v. Swearingen,*
   545 F. Supp. 3d 1247 (N.D. Fl. 2021)........................................... 15, 18

*New York State Rifle & Pistol Ass'n v. Bruen,*
   142 S. Ct. 2111 (2022) .................................................................. *passim*

*People v. Mosley*,
  2015 IL 115872 ................................................................... 15

*Powell v. Tompkins*,
  926 F. Supp. 2d 367 (D. Mass. 2013) .................................. 15

*United States v. Lopez*,
  514 U.S. 549 (1995) .............................................................. 5

*United States v. Morrison*,
  529 U.S. 598 (2000) .............................................................. 5

## STATUTES AND REGULATIONS

18 U.S.C. § 922 ...................................................................... 2

Alaska Stat.
  § 11.61.220 ........................................................................ 12
  § 18.65.705 ........................................................................ 12

Ariz. Rev. Stat.
  § 13-3102 ........................................................................... 12
  § 13-3112 ........................................................................... 12

Ark. Code § 5-73-309 ........................................................... 12

Cal. Penal Code
  § 26150 .............................................................................. 12
  § 26155 .............................................................................. 12
  § 26170 .............................................................................. 12
  § 27505 ........................................................................ 10, 11
  § 27510 ........................................................................ 10, 11

Col. Rev. Stat.
  § 18-12-112.5 ................................................................ 10, 11
  § 18-12-203 ........................................................................ 12

Conn. Gen. Stat.
  § 29-28 ....................................................................... 11
  § 29-34 ....................................................................... 10
  § 29-35 ....................................................................... 11
  § 29-36f ...................................................................... 13

D.C. Code Ann.
  § 7-2502.03 ........................................................... 11, 13
  § 7-2509.02 ................................................................. 11
  § 22-4507 .................................................................... 10

Del. Code Ann. tit. 11, § 1448 ................................... 11, 12, 13

Del. Code Ann. tit. 24, § 903 .......................................... 10, 11

Fla. Stat.
  § 790.053 .................................................................... 11
  § 790.06 ..................................................................... 11
  § 790.065 ............................................................... 10, 11

Ga. Code
  § 16-11-125.1 ............................................................. 11
  § 16-11-126 ................................................................. 11
  § 16-11-129 ................................................................. 11

Haw. Rev. Stat. Ann.
  § 134-2 ................................................................. 10, 11, 13
  § 134-9 ....................................................................... 12

430 Ill. Comp. Stat.
  65/2 ........................................................................... 13
  65/3 ....................................................................... 10, 11
  65/4 ....................................................................... 10, 13
  66/25 ......................................................................... 12

720 Ill. Comp. Stat. 5/24-1 ............................................... 12

Iowa Code § 724.22 ..................................................... 10, 13

Ky. Rev. Stat. § 237.110 ................................................................ 12

La. Rev. Stat. § 40:1379.3 ............................................................. 12

Mass. Gen. Laws ch. 140,
    § 130 ........................................................................................ 10
    § 131 ................................................................................. 12, 13
    § 131E ...................................................................................... 10

Md. Code Ann., Pub. Safety
    § 5-101 ..................................................................................... 13
    § 5-133 .............................................................................. 12, 13
    § 5-134 ..................................................................................... 10

Mich. Comp. Laws
    § 28.422 ................................................................................... 10
    § 28.425b ................................................................................. 12

Minn. Stat. § 624.714 .................................................................... 12

Mo. Rev. Stat. § 571.080 ............................................................... 11

Neb. Rev. Stat.
    § 69-2403 ................................................................................. 11
    § 69-2404 ................................................................................. 11
    § 69-2433 ................................................................................. 12

Nev. Rev. Stat. § 202.3657 ............................................................ 12

N.J. Stat. Ann.
    § 2C:58-3 ......................................................................... 11, 12
    § 2C:58-3.3 .............................................................................. 11
    § 2C:58-4 ................................................................................. 12
    § 2C:58-6.1 ...................................................................... 11, 13

N.M. Stat. § 29-19-4 ..................................................................... 12

N.Y. Penal Law § 400.00 ................................................ 11, 12, 13

N.C. Gen. Stat. § 14-415.121 ................................................ 12

Ohio Rev. Code Ann.
   § 2923.125 ................................................ 12
   § 2923.21 ................................................ 11

Okla. Stat. tit. 21 § 1272 ................................................ 12

Or. Rev. Stat. § 166.291 ................................................ 12

18 Pa. Cons. Stat. § 6109 ................................................ 12

R.I. Gen. Laws
   § 11-47-11 ................................................ 12
   § 11-47-18 ................................................ 12
   § 11-47-35 ................................................ 11
   § 11-47-37 ................................................ 11

S.C. Code § 23-31-215 ................................................ 12

Utah Code
   § 76-10-505 ................................................ 12
   § 76-10-523 ................................................ 12

Vt. Stat. Ann. tit. 13, § 4020 ................................................ 11

Va. Code § 18.2-308.02 ................................................ 12

Wash. Rev. Code Ann.
   § 9.41.070 ................................................ 12
   § 9.41.240 ................................................ 11, 13

Wis. Stat. § 175.60 ................................................ 12

Wyo. Stat. § 6-8-104 ................................................ 12

## OTHER AUTHORITIES

114 Cong. Rec. 12,279 (1968) ....................................................... 2

Kopel, David B. & Greenlee, Joseph, *The Second Amendment Rights of Young Adults*, 43 S. Ill. U. L.J. 496 (2019) ........................................ 18

## IDENTITY AND INTEREST OF AMICI STATES

The amici States of Illinois, Arizona, California, Colorado, Connecticut, Delaware, the District of Columbia, Hawaii, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, Vermont, and Washington submit this brief in support of Defendants-Appellants the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"); Steven Michael Dettelbach, in his official capacity as ATF Director; and Merrick B. Garland, in his official capacity as Attorney General of the United States, pursuant to Federal Rule of Appellate Procedure 29(a)(2).

The amici States have a substantial interest in the public health, safety, and welfare of their communities, which includes protecting their residents from the harmful effects of gun violence and promoting the safe use of firearms. *See Kolbe v. Hogan*, 849 F.3d 114, 139 (4th Cir. 2017) (en banc) (States' "interest in the protection of [their] citizenry and the public safety is not only substantial, but compelling"). To serve that interest, a large majority of States have historically implemented measures that regulate the sale and use of, and access to, firearms for

individuals under the age of 21.  Although the States have reached

different conclusions on how best to regulate in this area, they share an

interest in protecting their right to address gun violence in a way that is

both consistent with the Nation's historical tradition and tailored to the

specific circumstances in their States.  A decision that enjoins the

longstanding federal prohibition on the sale of handguns and handgun

ammunition by federally licensed retailers to individuals under the age

of 21 would interfere with this interest.  Accordingly, the amici States

urge this Court to reverse the district court's judgment.

## SUMMARY OF ARGUMENT

For almost 60 years, federal law has prohibited federally licensed

firearms retailers from selling handguns and ammunition for handguns

to individuals under the age of 21.  *See* 18 U.S.C. § 922(b)(1), (c)(1).

Congress enacted that "calibrated" statutory restriction, *Nat'l Rifle

Ass'n v. ATF* ("*NRA I*"), 700 F.3d 185, 209 (5th Cir. 2012), after finding

that individuals under that age accounted for a disproportionate share

of violent crimes, including murder, rape, and aggravated assault, 114

Cong. Rec. 12,279, 12309 (1968) (statement of Sen. Dodd).

Plaintiffs challenge this restriction on the ground that it unduly infringes upon the Second Amendment rights of young people, and the district court here agreed. Its decision should be reversed for multiple reasons. First, as amici States set out below, the Second Amendment allows governments to enact sensible and varied regulations designed to protect the public as long as those regulations are consistent with our Nation's historical tradition. Exercising that authority, a substantial majority of States and the District of Columbia have imposed age-based regulations on the purchase, possession, or use of firearms within their borders, and many have maintained those laws for over 150 years. Although the content of these regulations differs from jurisdiction to jurisdiction, 19 States and the District of Columbia have established a minimum age requirement of 21 for the purchase of handguns— essentially mirroring the federal law at issue here. A decision setting aside the longstanding federal prohibition on handgun sales to young adults could call those statutes, and others, into question.

Second, the district court's decision enjoining the challenged restriction is incorrect on the merits. The federal law is comparable to regulations imposed by States on young people for over 150 years,

including statutes enacted by at least 20 jurisdictions in the 1800s restricting access to firearms to individuals under the age of 21. The district court's contrary decision rests on multiple incorrect premises: The history of state militia laws is neither probative of the Second Amendment's scope nor as uniform as plaintiffs assert, and the laws enacted in the 1800s by as many as half of the States are relevant analogues under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). The decision below should be reversed.[1]

## ARGUMENT

### I.    The Second Amendment Allows Governments To Enact Measures To Promote Gun Safety And Protect Against Gun Violence That Are Consistent With Historical Tradition.

Although this case concerns a federal statute, plaintiffs' Second Amendment claim implicates fundamental principles of state authority. The States have long exercised their police power to protect the health, safety, and welfare of their residents. In fact, "the States possess

---

[1] A second case pending before the Court, *Brown v. ATF*, No 23-2275, likewise concerns the constitutionality of the federal statute restricting the commercial sale of handguns to young adults. As of the date of this filing, the federal government's motion to consolidate the two cases for argument remains pending. Amici States urge the Court to reverse the district court's decision in *Brown* for substantially the same reasons set out here.

primary authority for defining and enforcing the criminal law," *United States v. Lopez*, 514 U.S. 549, 561 n.3 (1995) (internal quotation marks omitted), and have "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons," *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996). These responsibilities include enacting measures to promote safety, prevent crime, and minimize gun violence within their borders. *See*, *e.g.*, *United States v. Morrison*, 529 U.S. 598, 618 (2000) ("Indeed, we can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.").

The Supreme Court has repeatedly affirmed the States' authority in this area, even as it has defined the scope and significance of the rights conferred by the Second Amendment. Indeed, in each of its major Second Amendment opinions—*District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and *Bruen*, 142 S. Ct. 2111— the Court expressly acknowledged the important role that governments in general, and the States in

particular, play in protecting residents from the harms of gun violence.
This role is consistent with our Nation's historical tradition.

To begin, in *Heller*, the Supreme Court made clear that the Second
Amendment right to keep and bear arms is "not unlimited." 554 U.S. at
626. The Court explained that although governments may not ban the
possession of handguns by responsible, law-abiding individuals or
impose similarly severe burdens on the Second Amendment right, they
still possess "a variety of tools" to combat the problem of gun violence.
*Id.* at 636. They may, for example, implement measures prohibiting
certain groups of people from possessing firearms, such as "felons and
the mentally ill," or "impos[e] conditions and qualifications on the
commercial sale of arms." *Id.* at 626-27. And the Court made the same
point shortly thereafter in *McDonald*, emphasizing that the Second
Amendment "by no means eliminates" the States' "ability to devise
solutions to social problems that suit local needs and values." 561 U.S.
at 785; *see also id.* at 802 (Scalia, J., concurring) ("No fundamental
right—not even the First Amendment—is absolute.").

The Supreme Court's recent decision in *Bruen* preserves the
substantial authority that governments retain in this area. At issue in

*Bruen* was a New York statute that required all individuals, including law-abiding individuals, to show a "special need" to obtain a license to carry a handgun in public. 142 S. Ct. at 2122-24. The Court clarified that in a Second Amendment challenge to a statute restricting the possession or use of firearms, a court must ask whether the challenged statute is "consistent with the Second Amendment's text and historical understanding." *Id.* at 2131. And it held that the New York statute at issue—unlike the licensing statutes employed by 43 other States, *id.* at 2138 n.9—failed that test, insofar as it imposed restrictions on conduct that fell within the Amendment's scope and were inconsistent with historical practice. *Id.* at 2138. As the Court explained, history did not support a "tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Id.*

But the Supreme Court emphasized—even as it reached that conclusion—its intent to preserve governments' substantial authority to regulate the possession, sale, and use of firearms. For one, the Court explained, governments need not demonstrate that a firearms regulation is historically justified unless the party challenging that regulation shows that the conduct it burdens falls within the Second

Amendment's text.  *See id.* at 2129-30 (if the Second Amendment's "plain text covers an individual's conduct . . . the government *must then* justify its regulation" (emphasis added)); *id.* at 2141 n.11 (similar).  For another, the Court elaborated, even once that threshold showing is met, governments can justify challenged regulations by pointing to a historical tradition of "relevantly similar" firearms regulations—a form of "reasoning by analogy."  *Id.* at 2132.  This approach was necessary, the Court added, because "[t]he regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868."  *Id.*

The historical inquiry demanded by the Second Amendment, in other words—as the Supreme Court emphasized—is not a "regulatory straightjacket."  *Id.* at 2133; *accord id.* ("[A]nalogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." (emphasis in original)).  And multiple Justices wrote separately in *Bruen* to emphasize that the States and the federal government retain the authority to regulate firearms to protect the health and safety of their residents.  Justice Kavanaugh, joined by the Chief Justice, concurred to emphasize the

8

"limits of the Court's decision" and to note that, "[p]roperly interpreted, the Second Amendment allows a variety of gun regulations." *Id.* at 2162 (internal quotation marks omitted). Justice Alito likewise concurred to note that *Bruen* "does not expand the categories of people who may lawfully possess a gun." *Id.* at 2157-58. Indeed, Justice Alito added, "federal law generally . . . bars the sale of a handgun to anyone under the age of 21," *id.*—the very restriction at issue in this case.

Taken together, then, *Heller*, *McDonald*, and *Bruen* emphasize that the States and the federal government retain a substantial measure of regulatory authority over firearms, presuming they act consistent with text and history in regulating.

## II. The Challenged Restriction Is Consistent With Measures Taken By Many States And Upheld On Historical Grounds By Courts Across The Country.

Congress's decision to regulate the sale of handguns to young people is well within the substantial authority that governments retain in this area. And although the States have reached different conclusions on how best to regulate the sale of, use of, and access to firearms—as they have historically been permitted to do, *see supra* Section I—virtually every State and the District of Columbia has

9

determined that imposing *some* age-based limits on the possession,

purchase, or use of firearms is appropriate to promote public safety and

curb gun violence within its borders.

Indeed, many States have imposed age-based restrictions that are

very similar to those enacted by Congress and challenged by plaintiffs

here.  Nineteen States and the District of Columbia—California,

Colorado, Connecticut, Delaware, Florida, Hawaii, Illinois, Iowa,

Massachusetts, Maryland, Michigan, Missouri, Nebraska, New Jersey,

New York, Ohio, Rhode Island, Vermont, Washington, and the District

of Columbia—have, like Congress, chosen to limit the circumstances

under which people under the age of 21 can purchase firearms.  All 20

of those jurisdictions have enacted a measure analogous to the federal

law at issue here, generally prohibiting the sale of handguns by

federally licensed dealers (or, in some cases, all sellers) to people under

21 (subject, in some cases, to exceptions).[2]  Many of these laws likewise

---

[2]  Cal. Penal Code §§ 27505(a); 27510; Col. Rev. Stat. 18-12-112.5(a.5);
Conn. Gen. Stat. § 29-34(b); D.C. Code Ann. § 22-4507; Del. Code Ann.
tit. 24, § 903; Fla. Stat. § 790.065(13); Haw. Rev. Stat. Ann. § 134-2(a),
(d), (h); 430 Ill. Comp. Stat. 65/3(a), 65/4(a)(2); Iowa Code § 724.22(2);
Mass. Gen. Laws ch. 140, §§ 130, 131E(b); Md. Code Ann., Pub. Safety
§ 5-134(b); Mich. Comp. Laws § 28.422(3)(b), (12); Mo. Rev. Stat.

generally prohibit the sale of long guns to people under 21 (subject

again, in some cases, to exceptions).[3]

Other States have adopted age-based firearms regulations in

other contexts.  For instance, many States have decided that it serves

the interest of public safety to limit the circumstances under which

those under the age of 21 may carry firearms in public.  To that end, at

least 15 jurisdictions—Connecticut, Delaware, Florida, Georgia,

Hawaii, Illinois, Maryland, Massachusetts, Minnesota, New Jersey,

New York, Oklahoma, Rhode Island, South Carolina, and the District of

Columbia—have concluded that people under the age of 21 should (in

some States, subject to exceptions) not be able to carry certain firearms

in public at all (that is, whether openly or concealed).[4]  At least 20

---

§ 571.080; Neb. Rev. Stat. §§ 69-2403, 69-2404; N.J. Stat. Ann.
§§ 2C:58-3(c)(4), 3.3(c), 6.1(a); N.Y. Penal Law § 400.00(1), (12); Ohio
Rev. Code Ann. § 2923.21(A)(2); R.I. Gen. Laws §§ 11-47-35(a)(1), 11-47-
37; Vt. Stat. Ann. tit. 13, § 4020; Wash. Rev. Code Ann. § 9.41.240.

[3]  Cal. Penal Code §§ 27505, 27510; Col. Rev. Stat. 18-12-112.5(a.5);
D.C. Code Ann. §§ 7-2502.03(a)(1), 7-2505.2(c), 22-4507; Del. Code Ann.
tit. 24, § 903; Fla. Stat. § 790.065(13); Haw. Rev. Stat. Ann. § 134-2(a),
(d), (h); 430 Ill. Comp. Stat. 65/3(a), 65/4(a)(2); Vt. Stat. Ann. tit. 13,
§ 4020; Wash. Rev. Code Ann. § 9.41.240.

[4]  Conn. Gen. Stat. §§ 29-28(b), 29-35(a); D.C. Code § 7-2509.02(a)(1);
Del. Code Ann. tit. 11, § 1448(a)(5); Fla. Stat. §§ 790.06(1), (2)(b),
790.053(1); Ga. Code §§ 16-11-125.1(2.1), 16-11-126(g)(1), 16-11-

additional States—Alaska, Arizona, Arkansas, California, Colorado, Kentucky, Louisiana, Michigan, Nebraska, Nevada, New Mexico, North Carolina, Ohio, Oregon, Pennsylvania, Utah, Virginia, Washington, Wisconsin, and Wyoming—have enacted statutes that bar people under the age of 21 from carrying certain firearms in public in a concealed manner (again, with some exceptions), but permit them to carry those firearms openly (or, in one State, the opposite).[5]  Finally, ten States and the District of Columbia have set a minimum age of 21 to possess certain firearms in the first place (again subject, in some cases, to

---

129(b)(2)(A); Haw. Rev. Stat. § 134-9(a); 430 Ill. Comp. Stat. 66/25(1); 720 Ill. Comp. Stat. 5/24-1(a)(10); Md. Public Safety Code § 5-133(d); Mass. Gen. Laws ch. 140, § 131(d)(iv); Minn. Stat. § 624.714; N.J. Stat. §§ 2C:58-3(c)(4), 2C:58-4(c); N.Y. Penal Law § 400.00(1); Okla. Stat. tit. 21 § 1272(A); R.I. Gen. Laws §§ 11-47-11, 11-47-18; S.C. Code § 23-31-215(A).  The provision of Delaware law barring people under the age of 21 from possessing certain firearms (and thus from carrying them in public) takes effect July 1, 2025.  Del. Code Ann. tit. 11, § 1448(a)(5)e.

[5]  Alaska Stat. §§ 11.61.220(a)(6), 18.65.705; Ariz. Rev. Stat. §§ 13-3102(A)(2), 13-3112(E); Ark. Code § 5-73-309; Cal. Penal Code § 26150, 26155, 26170 (effective Jan. 1, 2024); Colo. Rev. Stat. § 18-12-203(1)(b); Ky. Rev. Stat. § 237.110(4)(c); La. Rev. Stat. § 40:1379.3(C)(4); Mich. Comp. Laws § 28.425b(7)(a); Neb. Rev. Stat. § 69-2433; Nev. Rev. Stat. § 202.3657(3)(a)(1); N.M. Stat. § 29-19-4(A)(3); N.C. Gen. Stat. § 14-415.12(a)(2); Ohio Rev. Code § 2923.125(D)(1)(b); Or. Rev. Stat. § 166.291(1)(b); 18 Pa. Cons. Stat. § 6109(b); Utah Code §§ 76-10-505, 76-10-523(5); Va. Code § 18.2-308.02(A); Wash. Rev. Code § 9.41.070; Wis. Stat. § 175.60(3)(a); Wyo. Stat. § 6-8-104(a)(iv), (b)(ii).

exceptions).[6] Altogether, more than 34 jurisdictions have imposed *some* restriction on the purchase, possession, or use of firearms by people under the age of 21.[7]

The restriction plaintiffs challenge, in other words, is hardly an outlier; it is consistent with the way many States have elected to handle this issue. And courts across the country have largely upheld state laws that regulate firearms with respect to people under the age of 21. Importantly, many of these courts have upheld statutes like the challenged restriction based on the historical record and have agreed that age-based restrictions are consistent with our Nation's tradition of firearms regulation. Given the nature of the analysis conducted in those decisions, they remain sound under *Bruen*'s historical framework. *See Bruen*, 142 S. Ct. at 2127-28 (characterizing pre-*Bruen* historical analyses as "broadly consistent with *Heller*").

---

[6] Conn. Gen. Stat. § 29-36f; D.C. Code Ann. § 7-2502.03(a)(1); Del. Code Ann. tit. 11, § 1448(a)(5); Haw. Rev. Stat. Ann. § 134-2(a), (d); 430 Ill. Comp. Stat. 65/2(a)(1), 65/4(a)(2); Iowa Code § 724.22; Md. Code Ann., Pub. Safety §§ 5-101(r), 5-133(d); Mass. Gen. Laws ch. 140, § 131(d)(iv); N.J. Stat. Ann. § 2C:58-6.1(b); N.Y. Penal Law § 400.00(1)(a); Wash. Rev. Code Ann. § 9.41.240(2), (3). This aspect of Delaware's law takes effect on July 1, 2025. *Supra* n.3.

[7] *See supra* nn.3-5.

13

For instance, the Fifth Circuit has upheld the very restriction challenged here against a Second Amendment challenge, relying in substantial part on the historical record to do so. *See Nat'l Rifle Ass'n of Am., Inc. v. ATF* ("*NRA I*"), 700 F.3d 185 (5th Cir. 2012). In *NRA I*, the court undertook a lengthy analysis of the Nation's historical traditions regarding gun ownership and possession by people under the age of 21. *Id.* at 199–204. It explained that, at the Founding, it was understood that jurisdictions could "disarm[] select groups for the sake of public safety," an approach, the court observed, that was consistent with the "classical republican notion that only those with adequate civic 'virtue' could claim the right to arms." *Id.* at 200-01. Given that the common-law age of majority was 21, the court explained, the Founders would likely have "supported restricting an 18-to-20-year-old's right to keep and bear arms." *Id.* at 202. And in the nineteenth century, the court added, a large range of States enacted restrictions on the use or purchase of firearms by those under the age of 21. *Id.* at 202-03. In short, the court concluded, there is "considerable evidence" of a "longstanding, historical tradition" of restricting the purchase or use of firearms by those under the age of 21. *Id.* at 203.

Other courts have agreed with *NRA I*'s assessment of history.  In *Powell v. Tompkins*, 926 F. Supp. 2d 367 (D. Mass. 2013), *aff'd on other grounds*, 783 F.3d 332 (1st Cir. 2015), for instance, the court conducted a lengthy historical analysis prior to upholding Massachusetts's statute, which "set[] the minimum age for obtaining a license to carry a firearm at twenty-one," against a Second Amendment challenge.  *Id.* at 370, 385-89.  Similar statutes in Florida, Illinois, and Pennsylvania have also been upheld on historical grounds, with courts concluding that States may permissibly regulate the possession and use of firearms by people under the age of 21 consistent with our Nation's historical tradition.  *See, e.g.*, *National Rifle Ass'n v. Swearingen*, 545 F. Supp. 3d 1247 (N.D. Fla. 2021), *aff'd sub nom. Nat'l Rifle Ass'n v. Bondi*, 61 F.4th 1317, *reh'g en banc granted*, 72 F.4th 1346 (11th Cir. 2023); *Lara v. Evanchick*, 534 F. Supp. 3d 478, 491-92 (W.D. Pa. 2021), *appeal docketed*, No. 21-1832 (3d Cir.); *People v. Mosley*, 2015 IL 115872, ¶¶ 35-37.[8]

---

[8] The two court of appeals opinions to reach contrary conclusions were subsequently vacated.  *See Jones v. Bonta*, 34 F.4th 704, *vacated on reh'g*, 47 F.4th 1124 (9th Cir. 2022) (vacated and remanded for further proceedings); *Hirschfeld v. ATF*, 5 F.4th 407, *vacated*, 14 F.4th 322 (4th

In short, Congress's decision to enact a "calibrated" restriction prohibiting federal firearms licensees from selling handguns to people under 21, *NRA I*, 700 F.3d at 209, is consistent with the States' approaches in this area, which have been upheld as constitutional in light of our Nation's historical tradition.

## III. The District Court Erred In Finding The Challenged Statute Unconstitutional.

The district court reached a conclusion contrary to those reached by the courts described above, JA44-92, but the grounds it offers do not withstand scrutiny. As the United States explains, U.S. Br. 10-24, the federal law at issue here does not violate the Second Amendment, insofar as it imposes a restriction on young people that is consistent with those imposed throughout our Nation's history. The amici States agree with the United States' position and write to emphasize the following points.

First, the district court erred by focusing heavily on historical state militia laws, reasoning that "[t]he fact that an individual could, or was required to, serve in the militia indicates that society believed that

---

Cir. 2021) (vacated as moot when plaintiffs aged out of the challenged restriction).

he lawfully could, and should, keep and bear arms." JA69-70; *see* JA69-81. That reasoning conflates *rights* protected by the Second Amendment with *duties* imposed by law. The law is full of duties that do not give rise to rights: To take just one example, federal law requires most adult men to register for the armed forces draft, but there is no right to enlist in the armed forces. And to the extent that the district court viewed the text of the Second Amendment as supporting the conclusion that its scope is linked to militia service, *cf.* JA69, *Heller* rejects that view, explaining that the Second Amendment protects "an individual right unconnected with militia service." 554 U.S. at 605; *accord*, *e.g.*, *id.* at 599 (explaining that "most" Americans linked the right to bear arms with "self-defense and hunting" at the Founding). Indeed, the Fifth Circuit made that point in *NRA I*, explaining that "the right to arms is not co-extensive with the duty to serve in the militia." 700 F.3d at 204 n.17.

In any event, the district court was wrong to assert that, at the Founding, there was a "nationwide understanding that militia service should begin at age 18," JA77, and thus persons 18 or older must have had Second Amendment rights commensurate with those of adults. To

17

the contrary, the States set a range of minimum ages for militia service in the eighteenth and nineteenth centuries, spanning from 16 to 21. *See* Kopel & Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. Ill. U. L.J. 496, 533-89 (2019). And the States reserved the right to change the minimum age for militia service, and frequently did so: Virginia, as one example, set the minimum age at 16 in 1705, but raised it to 21 in 1723, lowered it to 18 in 1757, and then lowered it again to 16 in 1775. *Id.* at 577-80. There was therefore "no uniform age for militia service," *Swearingen*, 545 F. Supp. 3d at 1258; rather, "[i]n times of war, the age for service in militia crept down toward sixteen" and "in times of peace it crept up towards twenty-one," *id.* History, in other words, shows not that young people under the age of 21 were entitled to bear arms as full-fledged members of their political communities, but rather that they were called into service and asked to bear arms *by* those communities in times of significant need.

Second, the district court erred in discounting the relevance of historical sources from the nineteenth century. JA81-87. As the government explains, the historical record shows that, in the years immediately preceding and following the Civil War, at least 19 States

and the District of Columbia enacted statutes broadly similar to the statute challenged here—*i.e.*, generally prohibiting people under the age of 21 from purchasing firearms or carrying them in some manner in public. US. Br. 16-18; *see Bondi*, 61 F.4th at 1326-28, 1331. The district court rejected the salience of these sources on several grounds, JA82-86, but none is persuasive.

For one, the district court erred in dismissing Reconstruction Era laws wholesale on the ground that they were not enacted "in relevant proximity" to the Founding. *See* JA82 (concluding the government had not met its burden under *Bruen* "[f]or that reason alone"). The Supreme Court considered nineteenth-century historical evidence in both *Heller* and *Bruen*, describing Reconstruction Era perspectives on the scope of the Second Amendment as "instructive" in *Heller*, 554 U.S. at 615, and examining at length both antebellum and postbellum sources in *Bruen*, 142 S. Ct. at 2145-53. Although the *Bruen* Court observed the existence of "an ongoing scholarly debate on whether courts should primarily rely on" historical accounts from 1791, when the Second Amendment was ratified, or 1868, when the Fourteenth Amendment was ratified, *id.* at 2138; *accord id.* at 2162-63 (Barrett, J., concurring), it did not, as the

district court implicitly suggested, JA82, resolve that question in favor of Founding Era sources. To the contrary, the Court expressly stated it was "not address[ing]" (and thus not resolving) that dispute, because New York's good-cause regime was not supported by historical accounts from either period. *Bruen*, 142 S. Ct. at 2138.

The district court's view that the 1800s-era sources presented by the federal government were insufficient to shoulder its burden for other reasons, *see* JA85-86, is likewise incorrect. As the government explained below, many public universities in the early 1800s prohibited the possession of firearms by students. But the district court dismissed these regulatory measures as irrelevant, reasoning (among other things) that they "support the assumption that, *outside* [this] setting, college-aged students could, and did, regularly possess firearms." JA85 (emphasis in original). That is incorrect: These measures are fully consistent with the broader historical principle underlying both the historical regulation of firearms in the early Republic and the restriction challenged here, in that minors could (and, under the challenged law, can) access firearms only subject to parental approval and oversight. These sources—and others identified by the federal

government—thus show that the challenged statute is consistent with our Nation's history and tradition. The district court erred in adopting a contrary view.

## CONCLUSION

For these reasons, the Court should reverse the judgment below.

Respectfully submitted,

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

/s/ Alex Hemmer
ALEX HEMMER
Deputy Solicitor General
115 South LaSalle Street
23rd Floor
Chicago, Illinois 60603
(312) 814-5526
alex.hemmer@ilag.gov

KRIS MAYES
*Attorney General*
*State of Arizona*
2005 N. Central Avenue
Phoenix, AZ 85004

ROB BONTA
*Attorney General*
*State of California*
1300 I Street
Sacramento, CA 95814

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway, 10th Floor
Denver, CO 80203

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

BRIAN L. SCHWALB
*Attorney General*
*District of Columbia*
400 6th Street NW, Suite 8100
Washington, DC 20001

ANNE E. LOPEZ
*Attorney General*
*State of Hawai'i*
425 Queen Street
Honolulu, HI 96813

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of*
  *Massachusetts*
One Ashburton Place
Boston, MA 02108

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 MLK Jr. Blvd.
St. Paul, MN 55155

AARON D. FORD
*Attorney General*
*State of Nevada*
100 North Carson Street
Carson City, NV 89701

MATTHEW J. PLATKIN
*Attorney General*
*State of New Jersey*
25 Market Street
Trenton, NJ 08625

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

JOSH STEIN
*Attorney General*
*State of North Carolina*
114 W. Edenton Street
Raleigh, NC 27603

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

MICHELLE A. HENRY
*Attorney General*
*Commonwealth of Pennsylvania*
Strawberry Square, 16th Floor
Harrisburg, PA 17120

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

December 28, 2023

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) because it contains 4,274 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).  This brief complies with the typeface requirement of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word.

<u>/s/ Alex Hemmer</u>
ALEX HEMMER

December 28, 2023

# CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2023, I electronically filed the foregoing Brief of Amici Curiae Illinois et al. with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Alex Hemmer
ALEX HEMMER